Richard M. Cieri
Paul M. Basta
Stephen E. Hessler
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022-4611
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

      - and -

Ray C. Schrock
KIRKLAND & ELLIS LLP
300 N. La Salle
Chicago, Illinois 60654-3406
Telephone:     (312) 861-2000
Facsimile:     (312) 861-2200

      - and -

Jeffrey S. Powell
Daniel T. Donovan
KIRKLAND & ELLIS LLP
655 15th Street NW, Suite 1200
Washington, D.C. 20005
Telephone:     (202) 879-5000
Facsimile:     (202) 879-5200

Counsel to the Debtors and Debtors in Possession (except Charter Investment, Inc.)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CHARTER COMMUNICATIONS, INC., et al.,<br>Debtors. | Chapter 11<br><br>Case No. 09-11435 (JMP)<br>Jointly Administered |
| JPMORGAN CHASE BANK, N.A.,<br>as Administrative Agent,<br>Plaintiff,<br>-against-<br>CHARTER COMMUNICATIONS<br>OPERATING, LLC and CCO HOLDINGS, LLC,<br>Defendants. | Adversary Proceeding<br>Case No. 09-01132 (JMP) |

**DEBTORS' MOTION TO DISMISS JPMORGAN'S ADVERSARY COMPLAINT AND REQUEST FOR A DETERMINATION UNDER SECTION 157(b)(3)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION AND OVERVIEW ............................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.    JPMorgan's Adversary Proceeding Is A Core Proceeding Within The Meaning Of 28 U.S.C. § 157. ............................................................................ 2

        A.    A Pre-Petition Contract Dispute Falls Within This Court's Core Jurisdiction If It Directly Affects The Administration Of The Debtors' Estates. ............................................................................. 3

        B.    JPMorgan's Declaratory Judgment Action Falls Squarely Within This Court's Core Jurisdiction. ........................................................... 5

        C.    Orion Is Inapposite And Readily Distinguished. .................................. 9

    II.    The Court Should Dismiss The Complaint In The Exercise Of Its Sound Discretion. ...................................................................................................... 10

    III.    The Court Should Dismiss The Adversary Complaint For Failure To State A Claim. 12

        A.    On Its Face JPMorgan's Complaint Fails To State A Claim. ............................ 12

        B.    JPMorgan's Interpretation Of The Credit Agreement Is Untenable. .................. 14

CONCLUSION .................................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

IBM Poughkeepsie Employees Fed. Credit Union v. Cumis Ins. Soc'y, Inc.,
  590 F. Supp. 769 (S.D.N.Y. 1984) ................................................................................ 15

In re Adelphia Commcn's Corp.,
  307 B.R. 404 (Bankr. S.D.N.Y. 2004) ............................................................................ 4

In re Best Prods. Co.,
  68 F.3d 26 (2d Cir. 1995) ...................................................................................... 3, 4, 9, 10

In re CBI Holding Co.,
  529 F.3d 432 (2d Cir. 2008) .................................................................................. 3, 4, 7, 10

In re Delta Air Lines, Inc.,
  No. 07-civ-2649, 2007 WL 3166776 (S.D.N.Y. 2007) ..................................................... 4

In re Enron Corp.,
  349 B.R. 108 (Bankr. S.D.N.Y. 2006) ......................................................................... 4, 9

In re Iridium Operating LLC,
  285 B.R. 822 (S.D.N.Y. 2002) ..................................................................................... 5, 8

In re Liberty Warehouse Assocs. Ltd. P'shp,
  220 B.R. 546 (Bankr. S.D.N.Y. 1998) ............................................................................ 6

In re Magnesium Corp. of Am.,
  399 B.R. 722 (Bankr. S.D.N.Y. 2009) .......................................................................... 12

In re Musicland Holding Corp.,
  389 B.R. 761 (Bankr. S.D.N.Y. 2008) .......................................................................... 16

In re Orion Pictures Corp.,
  4 F.3d 1095 (2d Cir. 1993) ......................................................................................... 9, 10

In re PCH Assocs.,
  60 B.R. 870 (S.D.N.Y. 1986) ......................................................................................... 7

In re PSINet, Inc.,
  271 B.R. 1 (Bankr. S.D.N.Y. 2001) ............................................................................... 7

In re Quigley Co.,
  361 B.R. 723 (Bankr. S.D.N.Y. 2007) .......................................................................... 11

In re S.G. Phillips Constructors, Inc.,
  45 F.3d 702 (2d Cir. 1995) ............................................................................................ 4

In re United States Lines,
    197 F.3d 631 (2d Cir. 1999)............................................................ 1, 4, 7, 8, 9, 10

In re Valley Park Group, Inc.,
    96 B.R. 16 (Bankr. N.D.N.Y. 1989) ............................................................. 6

International Secs. Exch. LLC v. Dow Jones & Co., Inc.,
    No. 07-3324, 2009 WL 46889 (2d Cir. Jan. 8, 2009) ...................................... 11

Manley v. AmBase Corp.,
    337 F.3d 237 (2d Cir. 2003)........................................................................ 14

Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,
    458 U.S. 50 (1982)...................................................................................... 3

Oracle Real Estate Holdings I LLC v. Adrian Holdings Co. I, LLC,
    582 F. Supp. 2d 616 (S.D.N.Y. 2008).......................................................... 14

Public Serv. Comm'n of Utah v. Wycoff Co.,
    344 U.S. 237 (1952)................................................................................... 10

Shaw Group Inc. v. Triplefine Int'l Corp.,
    322 F.3d 115 (2d Cir. 2003)....................................................................... 14

Thomas v. Westchester County Health Care Corp.,
    232 F. Supp. 2d 273 (S.D.N.Y. 2002).......................................................... 12

Wilton v. Seven Falls Co.,
    515 U.S. 277 (1995)................................................................................... 10

Wolff v. Rare Medium, Inc.,
    210 F. Supp. 2d 490 (S.D.N.Y. 2002).......................................................... 13

**Statutes**

11 U.S.C. § 1124.................................................................................... 1, 6, 7, 10

11 U.S.C. § 1128.............................................................................................. 11

11 U.S.C. § 1129.............................................................................................. 11

28 U.S.C. § 1334................................................................................................ 3

28 U.S.C. § 157(b) ................................................................................... 1, 3, 5, 8

28 U.S.C. § 2201.............................................................................................. 10

**Rules**

Fed. R. Bankr. P. 3015 ...................................................................................................................... 11

Fed. R. Bankr. P. 7003 ...................................................................................................................... 11

Fed. R. Civ. P. 12(b) ........................................................................................................................... 2

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................... 12

## INTRODUCTION AND OVERVIEW

Under the terms of its prearranged plan of reorganization, Charter seeks to reinstate approximately $11.8 billion in senior debt instruments, including a credit agreement to which JPMorgan Chase Bank ("JPMorgan") serves as administrative agent for certain senior secured creditors. Because the prearranged plan is contingent on reinstatement, Charter's ability to reinstate its senior debt instruments under Bankruptcy Code section 1124 will be a critically important aspect of the confirmation hearing scheduled for late July.

Instead of complying with the ordinary bankruptcy rules and procedures for objecting to a proposed plan, JPMorgan has launched a preemptive strike in the form of a three count adversary complaint. The entire purpose of this complaint is to obtain declaratory relief that might block reinstatement and derail confirmation. Indeed, the complaint's opening paragraph alleges that the dispute is "ripe for adjudication" because the proposed plan "purports to leave" JPMorgan and the objecting creditors' "legal, contractual and equitable rights" under the credit agreement "unimpaired under Section 1124 of the Bankruptcy Code." Compl. ¶ 1. The gravamen of the complaint — the allegations on which all JPMorgan's claims rise or fall — is that two Designated Holding Companies supposedly violated section 8(g)(v) of the credit agreement, which requires that Designated Holding Companies "shall be able … to pay their debts as they become due." Compl. ¶ 37.

Because JPMorgan refuses to consent to the entry of final orders or judgment by the Court, Compl. ¶ 24, this motion seeks a determination that the adversary complaint falls within this Court's core jurisdiction. See 28 U.S.C. § 157(b)(3). For reasons explained below, JPMorgan's adversary proceeding is a core proceeding because it will have a significant impact on the administration of Charter's estates and on confirmation. See In re United States Lines, 197 F.3d 631, 637 (2d Cir. 1999). JPMorgan is actively participating in these chapter 11 cases.

The entire purpose of its complaint is to address issues that are intertwined with the core reinstatement issue. JPMorgan accordingly cannot complain that it is subject to the jurisdiction of an Article I court.

For these reasons, this motion also seeks dismissal of the complaint. All of the issues raised in the complaint will be fully and fairly addressed at confirmation. Accordingly, JPMorgan should not be permitted to circumvent the ordinary rules and procedures for objecting to confirmation by filing an unnecessary and improper adversary proceeding.

Finally, this motion seeks dismissal because the complaint fails to state a claim on which relief can be granted. <u>See</u> Fed. R. Civ. P. 12(b). The complaint is defective on its face because JPMorgan has not alleged a violation of the credit agreement. There is no dispute, as the complaint's allegations confirm, that the Designated Holding Companies have paid their debts as they have become due. <u>See</u> Compl. ¶ 56, 69. JPMorgan instead seeks to bind the Designated Holding Companies to an obligation that is not imposed under the agreement — to have sufficient funds available at all times to pay their debts "as they ***would*** become due" at some unspecified future point. Compl. ¶¶ 12, 42-45, 48, 57, 59, 81, 90, 92. Because that allegation is not consistent with the credit agreement and because JPMorgan's alleged interpretation is untenable, the Court should dismiss the complaint with prejudice.

## ARGUMENT

**I.     JPMorgan's Adversary Proceeding Is A Core Proceeding Within The Meaning Of 28 U.S.C. § 157.**

JPMorgan's adversary proceeding is a core proceeding within the meaning of section 157 of Title 28. Although JPMorgan alleges the opposite, <u>see</u> Compl. ¶ 24, it does not and cannot demonstrate that its complaint is independent of these chapter 11 cases or that this Court's exercise of jurisdiction would run afoul of constitutional limits. Because resolving the issues

raised in the complaint will directly affect the administration of Charter's estates, and because those issues are inextricably intertwined with the confirmation of Charter's plan, the adversary proceeding falls squarely within this Court's core jurisdiction.

A. **A Pre-Petition Contract Dispute Falls Within This Court's Core Jurisdiction If It Directly Affects The Administration Of The Debtors' Estates.**

Section 157(a) of Title 28 provides that bankruptcy courts may hear and determine "core" proceedings that either arise under title 11 or in a case under title 11. <u>See</u> 28 U.S.C. § 157(b); <u>see also</u> 28 U.S.C. § 1334. Section 157(b)(2) enumerates a non-exclusive list of matters that qualify as "core" proceedings. For example, core proceedings include (i) "matters concerning the administration of the estate," (ii) "allowance or disallowance of claims against the estate," (iii) "confirmations of plans," and (iv) "other proceedings affecting … the adjustment of the debtor-creditor … relationship." 28 U.S.C. § 157(b)(2)(A), (B), (L), (O).

In crafting section 157, Congress recognized that a "bankruptcy court's jurisdictional reach" is "essential to the efficient administration of bankruptcy proceedings." <u>In re CBI Holding Co.</u>, 529 F.3d 432, 460 (2d Cir. 2008). Congress therefore intended that a bankruptcy court's core jurisdiction would be "construed ***as broadly as possible***," constrained only by constitutional limits. <u>CBI Holding</u>, 529 F.3d at 460 (emphasis added); <u>see also</u> <u>In re Best Prods. Co.</u>, 68 F.3d 26, 31 (2d Cir. 1995) ("the legislative history … indicates that Congress intended that 'core proceeding' would be interpreted broadly, close to or congruent with constitutional limits"). The Constitution prohibits a bankruptcy court from adjudicating state-created private rights that are "independent of and antecedent to the reorganization petition" if doing so would subject non-consenting parties to the jurisdiction of an Article I court. <u>Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.</u>, 458 U.S. 50, 84 (1982). Those circumstances are limited, however, and controlling "decisions and the statutory text … give rise to the expectation that the

bankruptcy court will retain jurisdiction over most proceedings." In re Enron Corp., 349 B.R. 108, 111 (Bankr. S.D.N.Y. 2006).

The Second Circuit has held that "whether a contract proceeding is core" depends on "the degree to which the proceeding is *independent of the reorganization*." U.S. Lines, 197 F.3d at 637 (emphasis added); In re S.G. Phillips Constructors, Inc., 45 F.3d 702, 707 (2d Cir. 1995). Proceedings involving pre-petition contracts "can be core" if "the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings" or the proceeding "directly affect[s] a core bankruptcy function." U.S. Lines, 197 F.3d at 637. Where a pre-petition contract dispute has a "significant impact" on the "administration of the estate" or on "other core bankruptcy functions," the proceeding falls within the bankruptcy court's core jurisdiction. Id. at 638; CBI Holding, 529 F.3d at 462 (proceeding is core if it is "factually and legally interconnected" to claim against the estate). The law is clear: a "proceeding is core, even if claims are based upon prepetition contracts, where the resolution of the contract dispute directly affects a core administrative function." Enron, 349 B.R. at 111; In re Delta Air Lines, Inc., No. 07-civ-2649, 2007 WL 3166776, at *3 (S.D.N.Y. 2007).

Applying these principles, courts have held that a non-debtor's connection to, and participation in, the bankruptcy process is relevant in determining whether a contract dispute is core. If an adversary action is brought *against the* debtor by a party seeking to share in a distribution from the estate, that party submits to the equitable jurisdiction of the bankruptcy court. See Best Prods., 68 F.3d at 32; In re Adelphia Commcn's Corp., 307 B.R. 404, 418 (Bankr. S.D.N.Y. 2004). In those circumstances, there is no constitutional impediment to exercising jurisdiction because the party has not been "involuntarily subjected" to defending

state law claims before an Article I judge.  In re Iridium Operating LLC, 285 B.R. 822, 834 (S.D.N.Y. 2002).

**B.      JPMorgan's Declaratory Judgment Action Falls Squarely Within This Court's Core Jurisdiction.**

JPMorgan's adversary complaint is a core proceeding falling directly within this Court's core jurisdiction under section 157.  There can be no serious dispute that the entire purpose of the complaint is to avoid reinstatement by obtaining a declaration that events of default have occurred under the credit agreement.  Because reinstatement is a confirmation issue, and because the requested declaratory relief would require resolving contested issues directly affecting Charter's plan, the complaint is inextricably intertwined with confirmation and this Court's core bankruptcy functions.

The complaint itself demonstrates that the request for declaratory relief is not independent of these chapter 11 cases.  The complaint's opening paragraph alleges: the request for declaratory relief is "ripe for adjudication" not by operation of state law but because "the plan of reorganization proposed in [Charter's] bankruptcy cases … purports to leave" JPMorgan and the other objecting creditors' "legal, contractual and equitable rights" under the credit agreement "unimpaired under Section 1124 of the Bankruptcy Code."  Compl. ¶ 1.  The complaint thus unambiguously admits that this dispute arose in these chapter 11 cases.  See 28 U.S.C. § 157(b).  Indeed, although JPMorgan asserts that a declaration will "clarify the legal relations between the parties," Compl. ¶ 115, it has not alleged any standalone injury or actual legal controversy that exists outside of, or apart from, these chapter 11 cases.

Those admissions in the complaint are reinforced by JPMorgan's on-the-record admissions and discovery requests.  At the Court's first-day hearing, JPMorgan acknowledged that it filed its complaint in an attempt to re-negotiate the terms of the proposed plan and to

obtain discovery.  <u>See</u> 2009-03-30 Hrg. Tr. 54:12-22 (contending that the complaint was filed to "get a conversation going about how to really make this a pre-negotiated plan" and "at least get some discovery going").  At that hearing, JPMorgan's counsel addressed "three issues" that he contended were "directly on confirmation" and urged the Court to "evaluate th[e] plan and its prospects."  <u>Id</u>. at 45:7-12.  The last of these three issues — whether alleged defaults exist that preclude reinstatement — is the focus of the adversary complaint.  <u>Id</u>. at 53:23-24 ("just one last default, and this is the complaint").  In addition, against the backdrop of its complaint, JPMorgan has sought extensive discovery on issues pertaining to confirmation and reinstatement.  It has asked for documents concerning "reinstatement,"  1st Req. for Prod. at 13.  And it has requested "all documents concerning valuation or feasibility as it relates to the plan of reorganization."  2d Req. for Prod. at 10.

The allegations in JPMorgan's complaint, its on-the-record admissions, and its discovery requests confirm the obvious — the claims raised in its complaint are ***not*** independent of these chapter 11 cases.  To the contrary, those claims are entirely and undeniably intertwined with confirmation issues.  It cannot be disputed that determining whether a creditor's claims are impaired under section 1124 of the Code is a "core" bankruptcy court function.  <u>In re Liberty Warehouse Assocs. Ltd. P'shp</u>, 220 B.R. 546, 548 (Bankr. S.D.N.Y. 1998) (impairment determination is a "core" proceeding under section 157(b)(2)(B) and (L)); <u>see</u> <u>also</u> <u>In re Valley Park Group, Inc.</u>, 96 B.R. 16, 22 (Bankr. N.D.N.Y. 1989) (recognizing that the "impairment" determination under section 1124 is a "prerequisite" to confirmation).  Nor can it be disputed that, in determining whether the credit agreement may be reinstated, the Court will need to determine whether events of default have occurred under the credit agreement — the precise issues that JPMorgan has raised in its adversary complaint.

JPMorgan's complaint is therefore a core proceeding because it alleges a dispute that is a "necessary prerequisite to dealing with undisputedly core matters" under section 1124.  In re PSINet, Inc., 271 B.R. 1, 23 (Bankr. S.D.N.Y. 2001); CBI Holding, 529 F.3d at 461-62 (claims "based upon the same operative facts" as core proceedings are also core).  As courts have recognized, "it is appropriate to consider the reasons why the adversary proceeding was brought, and to see if its purpose or effect is a step to the determination of core matters."  PSINet, 271 B.R. at 23; see also In re PCH Assocs., 60 B.R. 870, 872-73 (S.D.N.Y. 1986) (because adversary proceeding sought determination of whether a true lease existed so that the determination could be used in connection with the allowance of claims against the estate, the issues raised in the adversary proceedings were core matters).  Because resolving whether alleged defaults have occurred is a critical step in determining whether reinstatement is permitted and, in turn, whether the proposed plan may be confirmed, resolving JPMorgan's complaint will necessarily be a "step to the determination of core matters."  PSINet, 271 B.R. at 23.

Moreover, it is clear that the issues raised in JPMorgan's complaint will have a "significant impact on the administration of the estate."  U.S. Lines, 197 F.3d at 638.  This case is analogous to United States Lines.  There, the Second Circuit considered whether a declaratory judgment action to establish a party's rights under indemnity insurance contracts qualified as a core proceeding.  Because the debtors faced substantial liability claims within the coverage of the insurance policy, the Second Circuit emphasized that the "major insurance contracts" were potentially the most "important asset" of the debtor's estate and "resolving disputes relating to" them was "bound to have a significant impact of the administration of the estate."  Id.  In order to effectuate an equitable distribution of the bankruptcy estate, a "comprehensive declaratory judgment" was required to determine whether the indemnification obligation was triggered and

"the amounts payable under the insurance contracts." Id. at 639. Accordingly, because the declaratory action would "directly affect the bankruptcy court's core administrative function of asset allocation among creditors," the Second Circuit held that the dispute fell within the bankruptcy court's core jurisdiction. Id.

So too here. In the circumstances of these chapter 11 cases, reinstatement is a central provision in the proposed plan — without reinstatement, the plan cannot be confirmed. As in U.S. Lines, resolving disputes relating to the credit agreement is "bound to have a significant impact on the administration of the estate[s]." Id. at 638. Indeed, the issues raised in JPMorgan's complaint are entangled with several core bankruptcy functions, including confirmation, the administration of the estate, the allowance or disallowance of claims, the estimation of claims, and the adjustment of Charter's relationship with its creditors. See 28 U.S.C. § 157(b)(2)(A), (B), (L), (O).

Finally, any doubt that the complaint is a core proceeding is resolved by JPMorgan's voluntary participation in these chapter 11 cases. See Iridium, 285 B.R. at 834 (claims are "core" because party was "intimately involved in the bankruptcy proceedings"). As the Court's order authorizing Charter to use cash collateral makes clear, JPMorgan is a creditor of the estates and will receive distributions under the proposed plan. Under the terms of the cash collateral order, to which JPMorgan consented, JPMorgan will receive a "superpriority claim[ ] as and to the extent provided in section 507(b), with priority in payment over any and all unsecured claims and administrative expense claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code." 2009-03-30 Interim Cash Collateral Order ¶ 8 [Dkt No. 69]. JPMorgan also will receive pre-petition interest and fees, as well as payment of out-of-pocket expenses. See id. JPMorgan has thus availed itself "of the special procedures present only in the context of

a bankruptcy proceeding" and, because it is actively participating in the bankruptcy process, cannot complain that it is subject to this Court's core jurisdiction. Enron, 349 B.R. at 112.

## C. Orion Is Inapposite And Readily Distinguished.

JPMorgan asserts that its complaint is a non-core proceeding based on the Second Circuit's decision in In re Orion Pictures Corp., 4 F.3d 1095 (2d Cir. 1993). See 2009-03-30 Hrg. Tr. 56. But Orion is inapposite and readily distinguished.

In Orion, the Second Circuit held that the bankruptcy court's "business judgment" in deciding a motion to assume is not a "formal ruling on the underlying disputed issues," and that an adversary proceeding filed by a debtor to assume a pre-petition contract was not within the bankruptcy court's core jurisdiction. Id. at 1109. The motion to assume in Orion was not part of the confirmation process; instead, the motion along with the related adversary proceeding was initiated by the debtor to prosecute a standalone claim for breach of contract. Because the counterparty to the pre-petition contract had filed no claim with (and had not even appeared before) the bankruptcy court, and because resolving the contract dispute would merely augment the estate's assets for general distribution, the effect on the administration of the estate was insufficient to render the proceedings core. Id. at 1102; see also U.S. Lines, 197 F.3d at 638; Best Prods., 68 F.3d at 32. Accordingly, the Second Circuit held that in those particular circumstances the bankruptcy court did not have core jurisdiction over the standalone breach-of-contract action brought by the debtor against a party who was not actively participating in the bankruptcy process.

In subsequent cases, the Second Circuit has limited Orion to its facts. In particular, the Second Circuit has held that Orion applies only where a debtor files a contract claim against a party that was not involved in the bankruptcy process and the outcome of the proceedings would have no meaningful affect on the reorganization process except to augment the assets of the

estate.  See CBI Holding, 529 F.3d at 462; U.S. Lines, 197 F.3d at 638; Best Prods., 68 F.3d at 32.  As courts have explained, Orion "merely found" that reading section 157(b) to encompass "'*[a]ny* [breach of] contract action that the debtor would pursue … [and that] would be expected to inure to the benefit of the debtor estate' would create an exception to Marathon that would swallow the rule."  Best Prods., 68 F.3d at 32 (emphasis in original).  When a complaint is filed against the debtor and would have "a much more direct impact on the core administrative functions of the bankruptcy court," Orion does not apply.  U.S. Lines, 197 F.3d at 638.

This case is entirely different than Orion.  The adversary proceeding has not been filed by the debtor, but on behalf of creditors actively participating in the bankruptcy process.  Here, the court is not merely addressing the debtors' "business judgment" for purposes of assuming a contract, but will determine whether creditors' objections to reinstatement defeat a debtor's exercise of rights under section 1124 of the Bankruptcy Code in connection its proposed chapter 11 plan.  As discussed above, the issues raised in JPMorgan's complaint are not "independent" of the reorganization, nor would a determination of those issues merely augment the "ultimate size" of Charter's estate.  Best Prods., 68 F.3d at 32.  Instead, JPMorgan's claims are so "factually and legally interconnected" with reinstatement and the confirmation of Charter's plan that designating the claims as core will not exceed constitutional limits.  See CBI Holding, 529 F.3d at 462.

## II.      The Court Should Dismiss The Complaint In The Exercise Of Its Sound Discretion.

It is well settled that, in the exercise of its discretion, a court may decline to hear a declaratory judgment action under 28 U.S.C. § 2201.  Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995).  As the Supreme Court has held, the Declaratory Judgment Act "confers a discretion on the courts" not "an absolute right upon the litigant."  Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 241 (1952).  In the declaratory judgment context, "the normal principle that

federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." International Secs. Exch. LLC v. Dow Jones & Co., Inc., No. 07-3324, 2009 WL 46889, at *1 (2d Cir. Jan. 8, 2009) (quoting Wilton, 515 U.S. at 288).

Because JPMorgan seeks only declaratory relief, and because the issues raised in JPMorgan's complaint are inextricably intertwined with issues related to reinstatement and confirmation, the Court should decline to exercise jurisdiction and grant dismissal in Charter's favor. For reasons explained above, JPMorgan's complaint is a premature confirmation objection masquerading as an adversary proceeding. The entire purpose of the complaint, as alleged in the complaint's opening paragraph and admitted in open court, is to prevent reinstatement and derail confirmation. See Compl. ¶ 1 (alleging that complaint is ripe because Charter's plan seeks to reinstate the credit agreement); see also 2009-03-30 Hrg. Tr. 54:12-22.

The Bankruptcy Code and Rules contain specific provisions addressing confirmation and setting forth particular requirements for objecting to a proposed plan. See 11 U.S.C. §§ 1128, 1129; see also Fed. R. Bankr. P. 3015. Bankruptcy Rule 9014 requires that an objection be filed by "motion," not through the guise of an adversary proceeding. Cf. Fed. R. Bankr. P. 7003 (providing process for filing an adversary proceeding). Because its adversary proceeding raises issues that will be fully and fairly addressed at confirmation, JPMorgan should not be permitted to circumvent the ordinary confirmation process by waging an adversary proceeding for tactical purposes. See In re Quigley Co., 361 B.R. 723, 734 (Bankr. S.D.N.Y. 2007) (cause of action for anticipatory repudiation may be addressed as core matter at confirmation). JPMorgan's complaint should therefore be dismissed.

**III.    The Court Should Dismiss The Adversary Complaint For Failure To State A Claim.**

The Court should dismiss JPMorgan's complaint if its "allegations, taken as true, along with any inferences that flow from them, are insufficient as a matter of law." In re Magnesium Corp. of Am., 399 B.R. 722, 742 (Bankr. S.D.N.Y. 2009).  In considering a motion to dismiss, the Court "may consider documents attached as an exhibit thereto or incorporated by reference," and may also consider "matters of which judicial notice may be taken" and "documents that are 'integral' to plaintiff's claims, even if not explicitly incorporated" into the complaint by reference.  Thomas v. Westchester County Health Care Corp., 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002).

**A.    On Its Face JPMorgan's Complaint Fails To State A Claim.**

The Court should dismiss JPMorgan's complaint because it fails to state claims on which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).

All three counts of JPMorgan's complaint hinge on the allegation that, "soon after" October 1, 2008, two Designated Holding Companies of Charter Communications Operating, LLC ("CCO") — Charter Communications Holdings, LLC ("Charter Holdings") and CCHI Holdings, LLC ("CIH") — violated the credit agreement's requirement that they shall "be able … to pay their debts as they become due."  Compl. ¶ 37.  But there is no dispute, as the complaint's allegations confirm, that the Designated Holding Companies have paid their debts as they have become due.  See Compl. ¶¶ 56, 69 (alleging that, in November 2008, interest payments were made to debtholders of Charter Holdings and CIH).  The complaint's own allegations thus demonstrate that no event of default has occurred under the credit agreement.

Precisely because the Designated Holding Companies have never missed a payment, JPMorgan has conjured up an extra-contractual obligation as the basis for its request for declaratory relief.  In particular, JPMorgan alleges that an event of default has occurred because

the Designated Holding Companies did not have sufficient funds available on hand at all times to pay their debts "as they *would* become due" at some unspecified future point. Compl. ¶¶ 12, 43-45, 90, 92 (emphasis added). But that obligation appears nowhere in the credit agreement. Section 8(g)(v) provides that an event of default occurs only if CCO, any of its subsidiaries, or any Designated Holding Company "shall be unable to … pay its debts as they become due." Compl. ¶ 37. Accordingly, because the credit agreement does not impose an obligation that Designated Holding Companies have sufficient funds available at all times to pay debts as they *would* become due at some unknown date in the future, the complaint allegations have not stated a violation of section 8(g)(v). See Wolff v. Rare Medium, Inc., 210 F. Supp. 2d 490, 496 (S.D.N.Y. 2002) (claims dismissed with prejudice because plain terms of parties' agreement did not impose obligation on defendant).

Because JPMorgan has not alleged a violation of section 8(g)(v), it also has not stated any claims on which relief can be granted. The non-existent obligation that Designated Holding Companies "pay their debts as they *would* become due" is the legal predicate for each of three counts in JPMorgan's complaint. JPMorgan alleges in Count I that, because the Designated Holding Companies purportedly violated section 8(g)(v), they also violated section 8(b) by making purportedly making false representations about their ability to pay their debts as they would become due. See Compl. ¶¶ 91-92. Similarly, in Count II, JPMorgan alleges that because the Designated Holding Companies purportedly violated section 8(g)(v), they also violated section 7.6, which prohibits making dividends or other distributions if an event of default is continuing. See Compl. ¶¶ 100-103. Finally, in Count III, JP Morgan alleges that, because the Designated Holding Companies purportedly violated section 8(g)(v), they also violated section 7.8, which prohibits prepayment of intercompany indebtedness if an event of default is

continuing.  See id. ¶¶ 75,111-113.  Accordingly, because the Designated Holding Companies have paid their debts and have not violated section 8(g)(v), the entire complaint is fatally defective and should be dismissed.

**B.      JPMorgan's Interpretation Of The Credit Agreement Is Untenable.**

The notion that a Designated Holding Company's obligation to pay its debts as they become due includes the more onerous obligation to have sufficient funds available at all times to be able to pay debts as they "***would*** become due" at some unidentified future point is untenable under the credit agreements' plain terms.  See Oracle Real Estate Holdings I LLC v. Adrian Holdings Co. I, LLC, 582 F. Supp. 2d 616, 627 (S.D.N.Y. 2008) (contract "words and phrases … should be given their plain meaning"); Shaw Group Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 121 (2d Cir. 2003).

It is also inconsistent with the structure and purpose of the agreement.  Section 7.6 of the credit agreement permits CCO to make certain distributions to enable affiliates to make interest payments provided, among other things, that no default by a Designated Holding Company "shall have occurred and be continuing or would result therefrom" — unless "the use of the proceeds of such distribution cures all such" defaults, and that no distribution occur earlier than 15 days before the date the relevant interest payment is due.  In other words, section 7.6 permits distributions if the funds are used to cure a default by a Designated Holding Company that fails to make an interest payment when it becomes due.  This provision would be rendered meaningless by JPMorgan's interpretation of the agreement.  See Manley v. AmBase Corp., 337 F.3d 237, 250 (2d Cir. 2003) ("New York law ... disfavors interpretations that render contract provisions meaningless").  Under JPMorgan's interpretation, a distribution could never be provided to cure a default in making an interest payment because the failure to make the payment would also necessarily result in an event of default under section 8(g)(v).  In short, if the relevant

entity lacked sufficient funds to make its interest payment, it also would be unable to pay its debts as they "would become due" and the credit agreement would then be in default.

JPMorgan's interpretation is also inconsistent with the fact that the agreement imposes a solvency obligation on CCO and its subsidiaries, but does not impose the same obligation on the Designated Holding Companies. The agreement defines "Solvent" to mean (among other things) that an entity "will be able to pay its debts as they mature." Compl., Exhibit A (Credit Agreement, at 22). Section 4.21 makes clear that there is no such solvency requirement imposed on CCO's Designated Holding Companies. Instead, the provision states: "The Borrower and its Subsidiaries, taken as a whole, are, and after giving effect to the financing transactions referred to herein will be and will continue to be, Solvent." Because the solvency requirement omits any mention of Designated Holding Companies and, indeed, makes clear that CCO and its subsidiaries will be "taken as a whole" for solvency purposes, it is unreasonable to read section 8(g)(v) as imposing a continuing solvency obligation on Charter's holding companies. IBM Poughkeepsie Employees Fed. Credit Union v. Cumis Ins. Soc'y, Inc., 590 F. Supp. 769, 773 n. 19 (S.D.N.Y. 1984) (under the doctrine of "expressio unius est exclusio alterius, when certain persons or categories are specified in a contract, an intention to exclude all others may be inferred").

As a matter of common sense, the agreement cannot be interpreted as requiring the Designated Holding Companies to have sufficient funds on hand at all times to pay the entirety of debts that may mature in the future. Imposing such an onerous obligation would make no sense. There would be no reason to borrow money if sufficient funds were already available. Instead, the credit agreement was sensibly structured to provide CCO with flexibility to transfer money between Designated Holding Companies. As long as the Designated Holding Companies

satisfy their obligation to pay debts as they become due, and as long as Charter and its subsidiaries, "taken as whole," remained solvent, JPMorgan's interests are fully protected.

JPMorgan undoubtedly recognizes that the agreement cannot be reasonably interpreted as imposing the implausible obligation that the Designated Holding Companies have sufficient funds on hand to pay all of their debts.  In re Musicland Holding Corp., 389 B.R. 761, 772 (Bankr. S.D.N.Y. 2008) (a plaintiff's allegations must be "plausible").  Its complaint's allegations therefore focus on the interest payments due on the Charter Holdings notes, suggesting that section 8(g)(v) required the Designated Holding Companies to have funds available at all times to make the interest payments as they "would become due."  See Compl. ¶¶ 48-56.  But there are no allegations in the complaint, and no alleged provisions in the credit agreement, supporting this distinction between interest and principal payments.  Because section 8(g)(v) merely provides that an event of default occurs if a Designated Holding Company "shall be unable to … pay its debts as they become due" and does not make any distinction between debts and interest payments, JPMorgan's allegations do not state a viable claim for relief.

# CONCLUSION

Charter respectfully requests that the Court dismiss the adversary complaint filed by JPMorgan because (1) it is a "core" proceeding under Bankruptcy Code section 157 and raises issues that are properly resolved as an objection to confirmation; and (2) it fails to state a claim upon which relief can be granted.

Respectfully submitted,

New York, New York
Dated:  April 10, 2009

/s/ Richard M. Cieri
Richard M. Cieri
Paul M. Basta
Stephen E. Hessler
KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York  10022-4611
Telephone:      (212) 446-4800
Facsimile:       (212) 446-4900

    - and -

Ray C. Schrock
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois  60601-6636
Telephone:      (312) 861-2000
Facsimile:       (312) 861-2200

    - and -

Jeffrey S. Powell
Daniel T. Donovan
Ashley C. Parrish
KIRKLAND & ELLIS LLP
655 15th Street NW, Suite 1200
Washington, D.C.  20005
Telephone:      (202) 879-5000
Facsimile:       (202) 879-5200

Counsel to the Debtors and Debtors in
Possession (except Charter Investment, Inc.)