| Name | Jurisdiction of Formation | Good Standing Oral Bring Down Dated As Of: |
|------|---------------------------|---------------------------------------------|
| Robin Media Group, Inc. | Nevada | March 6, 2007 |
| Helicon Partners I, L.P. | Delaware | March 6, 2007 |
| Peachtree Cable TV, L.P. | Delaware | March 6, 2007 |
| The Helicon Group, L.P. | Delaware | March 6, 2007 |
| Charter Communications Operating Capital Corp. | Delaware | March 6, 2007 |
| CCO NR Holdings, LLC | Delaware | March 6, 2007 |
| Charter Communications Ventures, LLC | Delaware | March 6, 2007 |
| CC Systems, LLC | Delaware | March 6, 2007 |
| CC Fiberlink, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink – Alabama, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink – Illinois, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink – Kentucky, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink – Michigan, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink –Missouri, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink TX-CCO, LLC | Delaware | March 6, 2007 |
| Charter Communications VII, LLC | Delaware | March 6, 2007 |
| Falcon Cable Communications, LLC | Delaware | March 6, 2007 |
| CC VII Purchasing, LLC | Delaware | March 6, 2007 |
| CC VII Leasing, LLC | Delaware | March 6, 2007 |
| Falcon Community Cable, L.P. | Delaware | March 6, 2007 |
| Falcon Video Communications, L.P. | Delaware | March 6, 2007 |
| Falcon Cable Media, A California Limited Partnership | Delaware | March 6, 2007 |
| Falcon Community Ventures I Limited Partnership | Delaware | March 6, 2007 |
| Falcon Cable Systems Company II, L.P. | Delaware | March 6, 2007 |
| Falcon Cablevision, A California Limited Partnership | Delaware | March 6, 2007 |
| Falcon Telecable, A California Limited Partnership | Delaware | March 6, 2007 |
| Falcon First, Inc. | Delaware | March 6, 2007 |
| Falcon First Cable of New York, Inc. | Delaware | March 6, 2007 |
| Falcon First Cable of the Southeast, Inc. | Delaware | March 6, 2007 |
| Athens Cablevision Inc. | Delaware | March 6, 2007 |
| Dalton Cablevision Inc. | Delaware | March 6, 2007 |

| Name | Jurisdiction of Formation | Good Standing Oral Bring Down Dated As Of: |
|---|---|---|
| Plattsburgh Cablevision Inc. | Delaware | March 6, 2007 |
| Scottsboro TV Cable, Inc. | Alabama | March 6, 2007 |
| Ausable Cable TV, Inc. | Delaware | March 6, 2007 |
| Charter Fiberlink AR-CCVII, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink AZ-CCVII, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink ID-CCVII, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink NV-CCVII, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink OK-CCVII, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink OR-CCVII, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink UT-CCVII, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink WA-CCVII, LLC | Delaware | March 6, 2007 |
| CC VI Holdings, LLC | Delaware | March 6, 2007 |
| Charter Communications VI, LLC | Delaware | March 6, 2007 |
| CC 10, LLC | Delaware | March 6, 2007 |
| CC VI Operating Company, LLC | Delaware | March 6, 2007 |
| Tioga Cable Company, Inc. | Pennsylvania | March 6, 2007 |
| Charter Fiberlink MS-CCVI, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink CA-CCO, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink CO-CCO, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink KS-CCO, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink MA-CCO, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink NC-CCO, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink NM-CCO, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink OH-CCO, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink SC-CCO, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink VA-CCO, LLC | Delaware | March 6, 2007 |
| Charter Fiberlink VT-CCO, LLC | Delaware | March 6, 2007 |
| CC V Holdings, LLC | Delaware | March 6, 2007 |
| CC VIII, LLC | Delaware | March 6, 2007 |
| CC VIII Holdings, LLC | Delaware | March 6, 2007 |
| CC VIII Operating, LLC | Delaware | March 6, 2007 |
| CC Michigan, LLC | Delaware | March 6, 2007 |

| Name | Jurisdiction of Formation | Good Standing Oral Bring Down Dated As Of: |
|---|---|---|
| Charter Communications V, LLC | Delaware | March 6, 2007 |
| CC New England, LLC | Delaware | March 6, 2007 |
| Charter Telephone of Minnesota, LLC | Delaware | March 6, 2007 |
| Hometown TV, Inc. | New York | March 6, 2007 |
| Midwest Cable Communications, Inc. | Minnesota | March 6, 2007 |
| Charter Video Electronics, Inc. | Minnesota | March 6, 2007 |
| Charter Communications Entertainment I, DST | Delaware | March 6, 2007 |
| Renaissance Media LLC | Delaware | March 6, 2007 |

* Denotes that a revised Operating Agreement, Joint Venture or Partnership Agreement, By Laws or Agreement of Limited Partnership, as applicable, is attached.

## SECRETARY'S CERTIFICATE

Pursuant to Section 5.1(h) of the Amended and Restated Credit Agreement, dated as of March 18, 1999, as amended and restated as of March 6, 2007 (the "Credit Agreement"; terms defined therein being used herein as therein defined unless otherwise defined herein), among CHARTER COMMUNICATIONS OPERATING, LLC (the "Borrower"), CCO HOLDINGS, LLC ("Holdings"), the lenders parties thereto (the "Lenders"), the Syndication Agents and the Co-Documentation Agents parties thereto and JPMORGAN CHASE BANK, N.A., as Administrative Agent for the Lenders, the undersigned Assistant Secretary of each of the entities listed on Schedule 1 hereto (each, a "Loan Party" and collectively, the "Loan Parties") hereby certifies as follows:

1.      There are no liquidation or dissolution proceedings pending or to my knowledge threatened against any Loan Party, nor has any other event occurred affecting or to my knowledge threatening the corporate, limited liability company or limited partnership existence of any Loan Party;

2.      Each Loan Party that is a limited liability company, corporation or limited partnership is duly organized, and validly existing under the laws of the State as of the date of the good standing certificate referenced next to such Loan Party's respective name on Schedule 1 attached to the Closing Certificate;

3.      Attached hereto as Annex 1 is a correct and complete copy of the resolutions duly adopted by the board of directors or committee of the board, partner, general partner or manager, as applicable, of each Loan Party authorizing (i) the execution, delivery and performance of the Loan Documents to which each Loan Party is a party and (ii) the transactions contemplated by the Loan Documents to which each Loan Party is a party; such resolutions have not in any way been amended, modified, revoked or rescinded and have been in full force and effect since their adoption to and including the date hereof and are now in full force and effect; such resolutions are the only organizational proceedings of the Loan Party now in force relating to or affecting the matters referred to therein;

4.      Attached hereto as Annex 2 is a correct and complete copy of the , Operating Agreement, Joint Venture or Partnership Agreement, By Laws or Agreement of Limited Partnership (collectively, the "Agreements") of each of the Loan Parties with an asterisk next to its name on Schedule 1 hereto (the "New Agreement Companies") as in effect at all times since the date hereof; and attached hereto as Annex 3 is a correct and complete copy of the Certificate of Formation of Renaissance Media, LLC as in effect on the date hereof, and such Agreements and Certificate of Formation has not been amended, repealed, modified or restated;

5.      The Agreements and the Certificate of Formation, Articles of Incorporation or Certificate of Limited Partnership (collectively, the "Certificates") of each Loan Party, other than the New Agreement Companies and Renaissance Media LLC, are in full force and effect and such Agreements and Certificates have not been amended, repealed, modified or restated since April 28, 2006;

6.      The following persons are now duly elected and qualified officers of each Loan Party holding the offices indicated next to their respective names and the signatures appearing opposite their respective names are the true and genuine signatures of such officers, and each of such officers is duly authorized to execute and deliver on behalf of each Loan Party, each of the Loan Documents to which it is a party, and each of such officers is duly authorized to execute and deliver on behalf of each Loan Party any certificate or other document to be delivered by such Loan Party pursuant to the Loan Documents to which it is a party.

| Name | Office | Signature |
|------|--------|-----------|
| Jeffrey T. Fisher | Executive Vice President and Chief Financial Officer | _____ |
| Eloise E. Schmitz | Senior Vice President – Strategic Planning | _____ |
| Thomas M. Degnan | Vice President – Finance and Corporate Treasurer | _____ |
| Richard R. Dykhouse | Vice President, Senior Counsel – Security Matters and Assistant Secretary | _____ |

IN WITNESS WHEREOF, the undersigned has signed this Certificate on behalf of each Loan Party as of this 5th day of March, 2007.

By:_____
Name:   Richard R. Dykhouse
Title:    Vice President, Senior Counsel – Security
           Matters and Assistant Secretary

I, Jeffrey T. Fisher am the Executive Vice President and Chief Financial Officer of each Loan Party and I do hereby certify effective as of the date hereof that Richard R. Dykhouse is the duly elected and qualified Vice President, Senior Counsel – Security Matters and Assistant Secretary of each Loan Party as of the date hereof and the signature set forth opposite his name is his genuine signature.

By:_____
Name:   Jeffrey T. Fisher
Title:    Executive Vice President and Chief Financial
           Officer

FORM OF ADDENDUM

CHARTER COMMUNICATIONS OPERATING, LLC
AMENDED AND RESTATED CREDIT AGREEMENT

To:     JPMorgan Chase Bank, N.A., as Administrative Agent

Ladies and Gentlemen:

Reference is made to (i) the AMENDED AND RESTATED CREDIT AGREEMENT, dated as of March 18, 1999, as amended and restated as of April 28, 2006 (the "Existing Credit Agreement"), among CHARTER COMMUNICATIONS OPERATING, LLC (the "Borrower"), CCO HOLDINGS, LLC ("CCOH"), the several banks and other financial institutions or entities from time to time parties thereto (the "Lenders"), JPMORGAN CHASE BANK, N.A., as Administrative Agent, and the Syndication Agents and Co-Documentation Agents parties thereto, and (ii) the AMENDED AND RESTATED GUARANTEE AND COLLATERAL AGREEMENT, dated as of March 18, 1999, as amended and restated as of April 28, 2006 (the "Existing Guarantee and Collateral Agreement"), made by the Borrower, CCOH and certain Affiliates of the Borrower, in favor of the Administrative Agent for the benefit of the Lenders. Unless otherwise defined herein, terms defined in the Credit Agreement Restatement (as hereinafter defined) and used herein are so used as so defined.

The Borrower has requested that (i) the Existing Credit Agreement be amended and restated in its entirety (the "Credit Agreement Restatement") and (ii) the Existing Guarantee and Collateral Agreement be amended and restated in its entirety (the "Guarantee and Collateral Restatement", together with the Credit Agreement Restatement, collectively, the "Restatements" and, individually, a "Restatement").

The undersigned (i) agrees to all of the provisions of each Restatement and (ii) irrevocably authorizes (A) JPMORGAN CHASE BANK, N.A. as Administrative Agent under and as defined in the Credit Agreement Restatement (the "Administrative Agent") to execute and deliver the Credit Agreement Restatement and (B) the Administrative Agent to execute and deliver the Guarantee and Collateral Restatement, in each case on the Restatement Effective Date.

This Addendum shall be binding on the successors and assigns of the undersigned.

Very truly yours,

_____
(NAME OF LENDER)

By _____
    Name:
    Title:

Dated as of March 6, 2007

FORM OF
ASSIGNMENT AND ASSUMPTION

Reference is made to the Amended and Restated Credit Agreement dated as of March 18, 1999, as amended and restated as of March 6, 2007 (the "Credit Agreement") among CHARTER COMMUNICATIONS OPERATING, LLC, a Delaware limited liability company (the "Borrower"), CCO HOLDINGS, LLC, a Delaware limited liability company ("Holdings"), the several banks and other financial institutions or entities from time to time parties thereto (the "Lenders"), JPMORGAN CHASE BANK, N.A., as Administrative Agent and the Syndication Agents and Co-Documentation Agents parties thereto. Unless otherwise defined herein, terms defined in the Credit Agreement and used herein shall have the meanings given to them in the Credit Agreement.

The Assignor identified on Schedule 1 hereto (the "Assignor") and the Assignee identified on Schedule 1 hereto (the "Assignee") agree as follows:

1. The Assignor hereby irrevocably sells and assigns to the Assignee without recourse to the Assignor, and the Assignee hereby irrevocably purchases and assumes from the Assignor without recourse to the Assignor, as of the Effective Date (as defined below), the interest described in Schedule 1 hereto (the "Assigned Interest") in and to the Assignor's rights and obligations under the Credit Agreement with respect to those credit facilities contained in the Credit Agreement as are set forth on Schedule 1 hereto (individually, an "Assigned Facility"; collectively, the "Assigned Facilities"), in a principal amount for each Assigned Facility as set forth on Schedule 1 hereto.

2. The Assignor (a) makes no representation or warranty and assumes no responsibility with respect to any statements, warranties or representations made in or in connection with the Credit Agreement or with respect to the execution, legality, validity, enforceability, genuineness, sufficiency or value of the Credit Agreement, any other Loan Document or any other instrument or document furnished pursuant thereto, other than that the Assignor is the legal and beneficial owner of the Assigned Interest and that it has not created any adverse claim upon the interest being assigned by it hereunder and that such interest is free and clear of any such adverse claim and (b) makes no representation or warranty and assumes no responsibility with respect to the financial condition of the Borrower, any of its Affiliates or any other obligor or the performance or observance by the Borrower, any of its Affiliates or any other obligor of any of their respective obligations under the Credit Agreement or any other Loan Document or any other instrument or document furnished pursuant hereto or thereto.

3. The Assignee (a) represents and warrants that it is legally authorized to enter into this Assignment and Assumption; (b) confirms that it has received a copy of the Credit Agreement, together with copies of the financial statements delivered pursuant to Section 4.1 or 6.1 thereof, as applicable, and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Assignment and Assumption; (c) agrees that it will, independently and without reliance upon the Assignor, the Agents or any Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Credit Agreement, the other Loan Documents or any other instrument or document furnished pursuant hereto or thereto; (d) appoints and authorizes the Administrative Agent to take such action as agent on its behalf and to exercise such powers and discretion under the Credit Agreement, the other Loan Documents or any other instrument or document furnished pursuant hereto or thereto as are delegated to the Administrative Agent by the terms thereof, together with such powers as are incidental thereto; and

(e) agrees that it will be bound by the provisions of the Credit Agreement and will perform in accordance with its terms all the obligations which by the terms of the Credit Agreement are required to be performed by it as a Lender including, if it is organized under the laws of a jurisdiction outside the United States, its obligation pursuant to Section 2.17(d) of the Credit Agreement.

4.   The effective date of this Assignment and Assumption shall be the Effective Date of Assignment described in Schedule 1 hereto (the "Effective Date"). Following the execution of this Assignment and Assumption, it will be delivered to the Administrative Agent for acceptance by it and recording by the Administrative Agent pursuant to the Credit Agreement, effective as of the Effective Date (which shall not, unless otherwise agreed to by the Administrative Agent, be earlier than five Business Days after the date of such acceptance and recording by the Administrative Agent).

5.   Upon such acceptance and recording, from and after the Effective Date, the Administrative Agent shall make all payments in respect of the Assigned Interest (including payments of principal, interest, fees and other amounts) to the Assignor for amounts which have accrued to the Effective Date and to the Assignee for amounts which have accrued subsequent to the Effective Date.

6.   From and after the Effective Date, (a) the Assignee shall be a party to the Credit Agreement and, to the extent provided in this Assignment and Assumption, have the rights and obligations of a Lender thereunder and under the other Loan Documents and shall be bound by the provisions thereof and (b) the Assignor shall, to the extent provided in this Assignment and Assumption, relinquish its rights and be released from its obligations under the Credit Agreement.

7.   This Assignment and Assumption shall be governed by and construed in accordance with the laws of the State of New York.

IN WITNESS WHEREOF, the parties hereto have caused this Assignment and Assumption to be executed as of the date first above written by their respective duly authorized officers on Schedule 1 hereto.

<u>Schedule 1</u>
to Assignment and Assumption with respect to the
Amended and Restated Credit Agreement dated as of March 18, 1999,
as amended and restated as of April 28, 2006, among
CHARTER COMMUNICATIONS OPERATING, LLC (the "<u>Borrower</u>"),
CCO HOLDINGS, LLC ("<u>Holdings</u>"), the Lenders parties thereto,
JPMORGAN CHASE BANK, N.A., as Administrative Agent,
and the Syndication Agents and Co-Documentation Agents named therein.

Name of Assignor: _____

Name of Assignee: _____
[and is an Affiliate/Approved Fund of [identify Lender]]

Effective Date of Assignment: _____

| Credit Facility Assigned | Aggregate Amount of all Lenders' Commitments and Loans | Amount of Commitments and Loans Assigned | Percentage of Commitments and Loans Assigned |
|---|---|---|---|
| [New Term Loan | $ | $ | %] |
| [Revolving Loan | $ | $ | %] |
| [Existing Term Loan | $ | $ | %] |

The Assignee (in the case an Assignee is not a Lender) agrees to deliver to the Administrative Agent a completed Administrative Questionnaire in which the Assignee designates one or more credit contacts to whom all syndicate-level information (which may contain material non-public information about the Loan Parties and their Related Parties or their respective securities) will be made available and who may receive such information in accordance with the Assignee's compliance procedures and applicable laws, including Federal and state securities laws.

[SIGNATURE PAGES FOLLOWS]

The terms set forth in this Assignment and Assumption are hereby agreed to:

[Name of Assignor], as Assignor

By:_____
      Name:
      Title:

[Name of Assignee], as Assignee

By:_____
      Name:
      Title:

Accepted for Recordation in the Register:

JPMORGAN CHASE BANK, N.A.,
as Administrative Agent

By:_____
      Name:
      Title:


Required Consents (if any):

JPMORGAN CHASE BANK, N.A.,
as Administrative Agent

By:_____
      Name:
      Title:

[JPMORGAN CHASE BANK, N.A.,
as Issuing Lender

By:_____
      Name:
      Title:]

[BANK OF AMERICA, N.A.,
as Issuing Lender


By:_____
      Name:
      Title:]


CHARTER COMMUNICATIONS
OPERATING, LLC

By:_____
      Name:
      Title:

FORM OF NEW LENDER SUPPLEMENT

SUPPLEMENT, dated _____, to the Credit Agreement dated as of March 18, 1999, as amended and restated as of March 6, 2007 (as amended, supplemented or otherwise modified from time to time, the "Credit Agreement") among CHARTER COMMUNICATIONS OPERATING, LLC, CCO HOLDINGS LLC, the lenders parties thereto (the "Lenders"), the Syndication Agents and the Co-Documentation Agents parties thereto and JPMORGAN CHASE BANK, N.A., as Administrative Agent.

WITNESSETH:

WHEREAS, the Credit Agreement provides in Section 2.1(d) thereof that any bank, financial institution or other entity may become a party to the Credit Agreement with the consent of the Borrower and the Administrative Agent (which consent shall not be unreasonably withheld) by executing and delivering to the Borrower and the Administrative Agent a supplement to the Credit Agreement in substantially the form of this Supplement; and

WHEREAS, the undersigned now desires to become a party to the Credit Agreement;

NOW, THEREFORE, the undersigned hereby agrees as follows:

1. The undersigned agrees to be bound by the provisions of the Credit Agreement, and agrees that it shall, on the date this Supplement is accepted by the Borrower and the Administrative Agent, become a Lender for all purposes of the Credit Agreement to the same extent as if originally a party thereto, with an Incremental Term Loan of $_____.

2. The undersigned (a) represents and warrants that it is legally authorized to enter into this Supplement; (b) confirms that it has received a copy of the Credit Agreement, together with copies of the financial statements referred to in Section 4.1 thereof and such other documents and information as it has deemed appropriate to make its own credit analysis and decision to enter into this Supplement; (c) agrees that it has made and will, independently and without reliance upon any Agents or any other Lender and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under the Credit Agreement or any instrument or document furnished pursuant hereto or thereto; (d) appoints and authorizes the Administrative Agent to take such action as agent on its behalf and to exercise such powers and discretion under the Credit Agreement or any instrument or document furnished pursuant hereto or thereto as are delegated to the Administrative Agent by the terms thereof, together with such powers as are incidental thereto; and (e) agrees that it will be bound by the provisions of the Credit Agreement and will perform in accordance with its terms all the obligations which by the terms of the Credit Agreement are required to be performed by it as a Lender including, without limitation, if it is organized under the laws of a jurisdiction outside the United States, its obligation pursuant to Section 2.17(d) of the Credit Agreement.

3. The undersigned's address for notices for the purposes of the Credit Agreement is as follows:

4. Terms defined in the Credit Agreement shall have their defined meanings when used herein.

IN WITNESS WHEREOF, the undersigned has caused this Supplement to be executed and delivered by a duly authorized officer on the date first above written.

[INSERT NAME OF LENDER]

By_____
   Name:
   Title:

Accepted this _____ day of
_____, _____.

CHARTER COMMUNICATIONS OPERATING, LLC

By_____
   Name:
   Title:

Accepted this _____ day of
_____, _____.

JPMORGAN CHASE BANK, N.A.,
as Administrative Agent

By_____
   Name:
   Title:

FORM OF INCREMENTAL FACILITY ACTIVATION NOTICE

To:     JPMorgan Chase Bank, N.A.,
         as Administrative Agent under the Credit Agreement referred to below

Reference is hereby made to the Credit Agreement, dated as of March 18, 1999, as amended and restated as of March 6, 2007 (as amended, supplemented or otherwise modified from time to time, the "Credit Agreement"), among CHARTER COMMUNICATIONS OPERATING, LLC, CCO HOLDINGS LLC, the lenders parties thereto (the "Lenders"), the Syndication Agents and the Co-Documentation Agents parties thereto and JPMORGAN CHASE BANK, N.A., as Administrative Agent. Unless otherwise defined herein, terms defined in the Credit Agreement and used herein shall have the meanings given to them in the Credit Agreement.

This notice is an Incremental Facility Activation Notice referred to in the Credit Agreement, and the Borrower and each of the Lenders party hereto hereby notify you that:

1.     Each Lender party hereto agrees to make an Incremental Term Loan in an amount set forth opposite such Lender's name on the signature pages hereof under the caption "Incremental Facility Amount".

2.     The Incremental Facility Closing Date is _____.

3.     The Incremental Term Maturity Date is _____.

Each of the Lenders party hereto and the Borrower hereby agrees that (a) the amortization schedule relating to this Incremental Term Facility is set forth in Annex A attached hereto and (b) the Applicable Margin for this Incremental Term Facility shall be _____.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

CHARTER COMMUNICATIONS OPERATING, LLC

By: _____
    Name:
    Title:

Incremental Term Loan Amount       [NAME OF LENDER]

$

By: _____
    Name:
    Title:

CONSENTED TO:

JPMORGAN CHASE BANK, N.A.,
  as Administrative Agent

By:_____
    Name:
    Title:

## AMORTIZATION SCHEDULE

FORM OF EXEMPTION CERTIFICATE

Reference is made to the Amended and Restated Credit Agreement dated as of March 18, 1999, as amended and restated as of March 6, 2007 (the "Credit Agreement") among CHARTER COMMUNICATIONS OPERATING, LLC, a Delaware limited liability company (the "Borrower"), CCO HOLDINGS, LLC, a Delaware limited liability company ("Holdings"), the several banks and other financial institutions or entities from time to time parties thereto (the "Lenders"), JPMORGAN CHASE BANK, N.A., as Administrative Agent and the Syndication Agents and Co-Documentation Agents parties thereto. Capitalized terms used herein that are not defined herein shall have the meanings ascribed to them in the Credit Agreement. [Name of Non-U.S. Person] (the "Non-U.S. Lender") is providing this certificate pursuant to subsection 2.17(d) of the Credit Agreement. The Non-U.S. Lender hereby represents and warrants that:

1. The Non-U.S. Lender is the sole record and beneficial owner of the Note(s) in respect of which it is providing this certificate and it shall remain the sole beneficial owner of the Note(s) at all times during which it is the record holder of such Note.

2. The Non-U.S. Lender is not a "bank" for purposes of Section 881(c)(3)(A) of the Internal Revenue Code of 1986, as amended (the "Code"). In this regard, the Non-U.S. Lender represents and warrants that:

(a) the Non-U.S. Lender is not subject to regulatory or other legal requirements as a bank in any jurisdiction; and

(b) the Non-U.S. Lender has not been treated as a bank for purposes of any tax, securities law or other filing or submission made to any governmental authority, any application made to a rating agency or qualification for any exemption from tax, securities law or other legal requirements.

3. The Non-U.S. Lender meets all of the requirements under Code Section 871(a) or 881(c) to be eligible for a complete exemption from withholding of taxes on interest payments made to it under the Credit Agreement (i.e., the Borrower will not be required to withhold any amounts under U.S. tax law with respect to such interest payments), including without limitation that it does not own, actually or constructively, 10% or more of the capital or profit interest of Charter Communications Holding Company, LLC, a Delaware limited liability company ("CCHC") (within the meaning of Section 871(h)(3)(B) of the Code) and is not a controlled foreign corporation related to CCHC (within the meaning of Section 864(d)(4) of the Code).

4. The Non-U.S. Lender shall promptly notify the Borrower and the Administrative Agent if any of the representations and warranties made herein are no longer true and correct.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned has duly executed this certificate as of the _____ day of _____, _____.

[NAME OF NON-U.S. LENDER]

By:_____
Name:
Title

FORM OF SPECIFIED SUBORDINATED NOTE

$_____

New York, New York
[Date]

_____, a _____ (the "<u>Obligor</u>"), hereby promises to pay to the order of _____, a _____ (together with any transferee or other holder of this Subordinated Note, the "<u>Holder</u>"), on [INSERT DATE NO EARLIER THAN ONE YEAR AFTER FINAL MATURITY OF FACILITIES AT TIME OF ISSUANCE OF SUBORDINATED NOTE] the principal amount of _____ DOLLARS ($_____) in lawful money of the United States of America.

1.     <u>Interest</u>. Interest on the principal amount hereof, [at a floating rate per annum equal to the sum of (i) the Applicable Margin for Revolving Loans under the Credit Agreement from time to time plus (ii) the three-month Eurodollar Rate from time to time, measured initially for an Interest Period beginning on the date hereof and ending three months thereafter, and thereafter measured for successive Interest Periods of three months duration,] [OR] [at a rate per annum equal to] [INSERT OTHER RATE ACCEPTABLE TO ADMINISTRATIVE AGENT], shall accrue and, except as otherwise provided in paragraph 2 below, be payable at such times as shall be agreed to by the Obligor and the Holder.

2.     <u>Payments</u>. Notwithstanding anything to the contrary herein, no payment or prepayment of principal of or interest on this Subordinated Note may be made, directly or indirectly, if a Default or Event of Default (as each such term is defined in the Credit Agreement referred to below) shall have occurred and be continuing or would result therefrom. Subject to the preceding sentence, (a) payments of principal of and interest on this Subordinated Note shall be made in immediately available funds to such account of the Holder as the Holder may designate in writing and (b) the Obligor may prepay all or any part of the principal of this Subordinated Note, together with accrued interest on the amount prepaid, to the extent permitted by the Credit Agreement. If any payment hereunder becomes due and payable on a day other than a business day, the due date thereof shall be extended to the next succeeding business day.

3.     <u>Definitions</u>. Terms defined in the Credit Agreement referred to below are used herein with the meanings set forth in such Credit Agreement unless otherwise defined herein. As used herein, the following terms shall have the following meanings:

"<u>Credit Agreement</u>" shall mean the Amended and Restated Credit Agreement, dated as of March 18, 1999, as amended and restated as of March 6, 2007 among the Obligor, certain of its affiliates, the Lenders parties thereto and the Co-Documentation Agents, Syndication Agents and Administrative Agent named therein, as amended, restated, supplemented or otherwise modified from time to time.

"<u>Senior Creditors</u>" shall mean the collective reference to the Lenders, the Administrative Agent and all other holders of Senior Debt.

"<u>Senior Debt</u>" shall mean (a) (i) the principal amount of all loans and guarantee obligations from time to time outstanding or owing under the Credit Agreement and the other Loan Documents executed and delivered by the Obligor pursuant thereto, together with interest

thereon (including, without limitation, any interest subsequent to the filing by or against the Obligor of any bankruptcy, reorganization or similar proceeding, whether or not such interest would constitute an allowed claim in any such proceeding, calculated at the rate set forth for overdue loans in the Credit Agreement) and all fees and expenses owing under the Credit Agreement and the other Loan Documents and (ii) all other obligations of the Obligor under the Credit Agreement, and the other Loan Documents and (b) all other Indebtedness of the Obligor except for the Subordinated Debt and any Indebtedness which is expressly by its terms or the terms of the instrument creating or evidencing such Indebtedness made equal or subordinate in right of payment with respect to the Subordinated Debt.

"Subordinated Debt" shall mean the principal amount of this Subordinated Note from time to time outstanding and unpaid, together with accrued and unpaid interest thereon and any other amounts of any kind whatsoever from time to time owing hereunder.

4. Subordination. (a) Payment of the Subordinated Debt is and shall be expressly subordinate and junior in right of payment to the prior payment in full in cash of the Senior Debt to the extent and in the manner set forth herein, and the Subordinated Debt is hereby so subordinated as a claim against the Obligor or any of the assets of the Obligor, whether such claim be (i) in the event of any distribution of the assets of the Obligor upon any voluntary or involuntary dissolution, winding-up, total or partial liquidation or reorganization, or bankruptcy, insolvency, receivership or other statutory or common law proceedings or arrangements involving the Obligor or the readjustment of its liabilities or any assignment for the benefit of creditors or any marshaling of its assets or liabilities (collectively called a "Reorganization"), or (ii) other than in connection with a Reorganization, to the prior payment in full in cash of the Senior Debt.

(b) If the Holder shall receive any payment in violation of the terms hereof, it shall hold such payment in trust for the benefit of the Senior Creditors and forthwith pay it over to the Administrative Agent, for application to and payment of the Senior Debt.

(c) In the event of any Reorganization relative to the Obligor or its properties, then all of the Senior Debt shall first be paid in full in cash before any payment is made upon the Subordinated Debt, and in any such proceedings any payment or distribution of any kind or character, whether in cash or property or securities, which may be payable or deliverable in respect of this Subordinated Note shall be paid or delivered directly to the Administrative Agent, for application in payment of the Senior Debt, unless and until all the Senior Debt is paid in full in cash, and the Holder hereby irrevocably authorizes the Administrative Agent, as attorney-in-fact for the Holder, to vote any claim or proof of claim in such proceedings in respect of the Subordinated Debt, to file or prove any claim in such proceedings in respect of the Subordinated Debt, to demand, sue for, collect and receive any such payment or distribution, to apply such payment or distribution to the payment of the Senior Debt, and to take such other action (including acceptance or rejection of any plan of Reorganization) in the name of the Holder or of the relevant Senior Creditors as the Administrative Agent may deem necessary or advisable for the enforcement of the provisions hereof. The Holder shall execute and deliver such other and further powers of attorney, assignments, proofs of claim or other instruments, and take such other actions, as may be requested by the Administrative Agent in order to enable the Administrative Agent to accomplish any of the foregoing, but only with respect to the Holder's capacity as a holder hereof and not in respect of any other relationship between the Holder and the Obligor.

(d) In the event that, notwithstanding the foregoing, upon any such Reorganization, any payment or distribution of the assets of the Obligor of any kind or character, whether in cash, property or securities, shall be received by the Holder in respect of this Subordinated Note before all Senior Debt is paid in full in cash, such payment or distribution shall be held in trust for the Senior

Creditors and shall forthwith be paid over to the Administrative Agent for application to the payment of the Senior Debt until all Senior Debt shall have been paid in full in cash.

(e)     Any amounts received by the Administrative Agent hereunder for application to the Senior Debt shall be so applied to such portion of the Senior Debt as shall be determined by the Administrative Agent in its sole discretion.  The provisions of this Subordinated Note shall not be deemed to impose on the Administrative Agent any duties or responsibilities to any Senior Creditor, or create any fiduciary relationship with any Senior Creditor.

(f)     The Holder agrees that, until the Senior Debt has been paid in full in cash, (i) if a Default or Event of Default shall have occurred and be continuing or would result therefrom, or if a Reorganization shall have commenced, it will not take, demand or receive, or take any action to accelerate or collect, any payment of all or any part of the Subordinated Debt and (ii) it will not file, join in or facilitate any petition or proceeding seeking the bankruptcy of the Obligor.

(g)     The Senior Creditors, or any of them, may, at any time and from time to time, without the consent of or notice to the Holder, without incurring any responsibility to the Holder, and without impairing or releasing any of the rights of any Senior Creditor, or any of the obligations of the Holder:

(i)     change the amount or terms of or renew or extend any Senior Debt or enter into or amend in any manner any agreement relating to any Senior Debt;

(ii)     sell, exchange, release or otherwise deal with any property at any time pledged or mortgaged to secure any Senior Debt;

(iii)     release anyone liable in any manner for the payment or collection of any Senior Debt; and

(iv)     exercise or refrain from exercising any rights against the Obligor and others (including the Holder).

(h)     The Holder hereby waives notice of or proof of reliance by any Senior Creditor upon the provisions hereof, and the Senior Debt shall conclusively be deemed to have been created, contracted, incurred or maintained in reliance upon the provisions hereof.

(i)     The Obligor hereby waives diligence, presentment, demand, protest and notice of any kind whatsoever.  The nonexercise by the Administrative Agent or any other Senior Creditor of any of its rights hereunder in any particular instance shall not constitute a waiver thereof in that or any subsequent instance.

(j)     The subordination provisions contained herein are for the benefit of the Senior Creditors and their respective successors and assigns and may not be rescinded or cancelled or modified in any way without the prior written consent of the Administrative Agent.

5.     Entire Agreement.  Each of the Obligor and the Holder confirms that this Subordinated Note constitutes the entire contract among the parties relating to the subject matter hereof and supersedes any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.

6.     Severability.     Any provision of this Subordinated Note that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

7.     Successors and Assigns.     All covenants and agreements of the Obligor and the Holder under this Subordinated Note shall be binding on the Obligor and the Holder and their respective successors and assigns.  Neither this Subordinated Note nor any interest therein shall be transferred or assigned without the prior written consent of the Administrative Agent.

8.     Amendments.     No amendment, supplement, waiver or other modification to this Subordinated Note shall be effective without the prior written consent of the Obligor, the Holder and the Administrative Agent.

9.     **Governing Law.     THIS SUBORDINATED NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK.**

CHARTER COMMUNICATIONS OPERATING, LLC

By: _____
    Name:
    Title:

Acknowledged and Agreed:

[NAME OF HOLDER]

By:_____
    Name:
    Title:

EXHIBIT I to the
AMENDED AND RESTATED CREDIT AGREEMENT

FORM OF NOTICE OF BORROWING

Date: _____, 20__

To:     JPMorgan Chase Bank, N.A., as Administrative Agent

Ladies and Gentlemen:

        Reference is made to that certain Amended and Restated Credit Agreement, dated as of March 18, 1999, as amended and restated as of March 6, 2007, among CHARTER COMMUNICATIONS OPERATING, LLC, a Delaware limited liability company (the "Borrower"), CCO HOLDINGS, LLC, a Delaware limited liability company, the several banks and other financial institutions or entities from time to time parties to this Agreement, JPMORGAN CHASE BANK, N.A., as Administrative Agent and the Syndication Agents and Co-Documentation Agents named therein.

        The undersigned hereby requests:

        A borrowing of [Revolving Loans][New Term Loans]

        1.      On _____ (a Business Day).

        2.      In the amount of $_____.

        3.      Comprised of _____.
                        [Type of Loan requested]

        4.      For Eurodollar Loans: with an Interest Period of _____ months.

        The undersigned hereby certifies on the date hereof that, immediately after giving effect to such borrowing, (a) the aggregate principal amount of outstanding Revolving Loans, when added to the sum of the outstanding L/C Obligations and the aggregate principal amount of the outstanding Swingline Loans, does not exceed the aggregate amount of the Revolving Commitments (b) the aggregate principal amount of outstanding New Term Loans does not exceed the aggregate amount of New Term Commitments and (c) no Default or Event of Default shall have occurred and continuing.

        The undersigned hereby certifies that each of the conditions set forth in Section 5.2 of the Credit Agreement have been satisfied.

                                        CHARTER COMMUNICATIONS OPERATING, LLC

                                        By: _____
                                            Name:
                                            Title:

FORM OF RELEASE

AUTHORIZATION OF DISPOSITION OF
COLLATERAL FREE OF SECURITY INTEREST

This Authorization of Disposition of Collateral Free of Security Interest is made on this __ day of _____ by JPMORGAN CHASE BANK, N.A., as Administrative Agent (the "Administrative Agent") under that certain Amended and Restated Credit Agreement dated as of March 18, 1999, as amended and restated as of March 6, 2007 (the "Credit Agreement"), between Charter Communications Operating, LLC, a Delaware limited liability company, as "Borrower", and the other financial institutions and other lenders parties thereto.

WHEREAS, the Borrower's direct and indirect subsidiaries (individually hereafter referred to as a "Subsidiary Guarantor", and collectively, "Subsidiary Guarantors") have guaranteed the Borrower's obligations under the Credit Agreement pursuant to that certain Amended and Restated Guarantee and Collateral Agreement of even date with the Credit Agreement (hereafter, the "Guarantee and Collateral Agreement"), and have pledged as collateral security for their obligations, all assets owned by such Subsidiary Guarantors in which a security interest can be perfected by filing, with the Secretary of State of the State of registration of each such entity, of a Uniform Commercial Code financing statement under Article 9 of each such State (such assets being hereafter referred to as the "Collateral");

WHEREAS, [ENTITY], a _____ [and others if applicable] ([collectively,] "Seller Subsidiary(ies)"), as "Seller(s)", has (have) entered into that certain _____ Agreement dated as of _____, with [ENTITY], a _____, as "Buyer" (said agreement as amended being referred to herein as the "Purchase Agreement", and the assets to be sold pursuant thereto being referred to as the "Sold Assets");

WHEREAS, the Sold Assets include: (i) certain operating assets of the Seller Subsidiaries ("Operating Assets")[, and (ii) all of the membership and other ownership interests in [ENTITY: INDICATE WHETHER A GUARANTOR] (hereafter, the "Sold Entity", and the equity and other ownership interests therein, the "Sold Equity Interests");

WHEREAS, the Sold Assets, including the Operating Assets[, and the Sold Equity Interests,] constitute part of the Collateral under the Guarantee and Collateral Agreement; and

WHEREAS, the sale, transfer and/or disposition of the Sold Assets pursuant to the Purchase Agreement is not prohibited by the Credit Agreement or any other Loan Document (as defined in the Credit Agreement), and the Administrative Agent is required, upon sale thereof, to release such assets from any lien created in favor of the Administrative Agent under and pursuant to the Guarantee and Collateral Agreement[, and to release the Sold Entity from any obligations as a "Guarantor" or "Grantor" under and as defined in the Guarantee and Collateral Agreement.]

NOW THEREFORE, the Administrative Agent, for itself and on behalf of the lenders, by execution hereof, (i) authorizes the sale of the Sold Assets free of any and all security interests and other rights the Administrative Agent acquired in the Sold Assets by virtue of the Guarantee and Collateral Agreement [and (ii) confirms that the Sold Entity is neither a "Guarantor" nor a "Grantor" under and as defined in the Guarantee and Collateral Agreement][, and (ii) hereby releases the Sold Entity from its obligations as a "Grantor" or "Guarantor" under the Guarantee and Collateral Agreement and hereby

authorizes the Buyer or its designee to file UCC-3 termination statements terminating all Uniform Commercial Code financing statements which specifically name any Sold Entity as debtor and with respect to which the Administrative Agent is the secured party of record] [and (iii) agrees to bear the expense of terminating and/or releasing any Uniform Commercial Code financing statement other than those filed with the Secretary of State of the jurisdiction of incorporation or formation of (x) such Sold Entity or (y) the seller of such Sold Assets) in accordance with Section 8.3 of the Guarantee and Collateral Agreement]

   IN WITNESS WHEREOF, Administrative Agent has caused this Authorization of Disposition of Collateral Free of Security Interest to be executed by its authorized officer on and as of the date first set forth above.

                           JPMORGAN CHASE BANK, N.A.,
                           as Administrative Agent


                           By:_____
                              Name:
                              Title: